UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-21350-CIV-GRAHAM/SIMONTON

ANDRES GREGORY, et. al.,

      Plaintiffs,

v.

MIAMI-DADE COUNTY, et. al.,

      Defendants.

_____/

ORDER DENYING NONPARTIES NBC AND
REPORTER WILLARD SHEPARD'S MOTION TO QUASH
FEBRUARY 2015 SUBPOENA DUCES TECUM FOR
DEPOSITION AND FOR PROTECTIVE ORDER

      This Matter is before the Court upon Nonparties NBC and Willard Shepard's Motion to Quash February 2015 Subpoena Duces Tecum for Deposition and for Protective Order, ECF No. [118].  The Defendants have filed a Response to the Motion, ECF No. [125] and NBC and Willard Shepard have filed a Reply, ECF No. [131].  The Motion has been referred by the Honorable Donald L. Graham, the District Judge assigned to the case, to the undersigned Magistrate Judge to take all necessary and proper action as required by law, ECF No. [124].

      On May 5, 2015, the undersigned held a hearing on the Motion.[1]  Based upon the written submissions, the arguments made at the hearing and the applicable law, the undersigned denies the Nonparties' Motion to Quash and for Protective Order related to the Defendants' February 2015 Subpoena Duces Tecum.

_____

      [1] Both Counsel for Defendant Perez and NBC attended the hearing and presented argument on the Motion to Quash.  Counsel for Andres Gregory elected not to attend the hearing.

I.      <u>BACKGROUND</u>

This civil rights action, brought pursuant to 42 U.S.C. § 1983, arises out of a Miami-Dade County Police Officer's shooting of a minor that occurred on May 28, 2012, ECF No. [1].  According to the Third Amended Complaint ("Complaint"), Plaintiff Sebastian Gregory ("Gregory") was shot multiple times by Defendant Officer Perez during an encounter between the two, ECF No. [60].   The Complaint alleges that after Officer Perez ordered Sebastian Gregory to the ground, Gregory "was in the process of making himself prone on the ground with his back to Officer Perez" and "posed no threat" when Officer Perez shot Gregory multiple times in the back, ECF No. [60] at 2. The Complaint alternatively alleges that while Gregory "was in the process of making himself prone on the ground with his back to Officer Perez when [he] turned slightly to make himself more comfortable while posing no threat to Officer Perez" and was shot in the back multiple times, ECF No. [60] at 3.

In the Answer, Defendant Officer Perez asserts, *inter alia*, that his actions were justified and reasonable and further asserts that Officer Perez reasonably believed that the force he used in his encounter with Gregory was necessary to prevent imminent death or great bodily harm to himself or to prevent the imminent commission of a forcible felony, ECF No. [64] at 3-4.

The dispute currently before the Court involves the request by Nonparty NBC's subsidiary WTVJ-TV and one of its reporter's, Willard Shepard, (collectively referred to as "NBC") request for a Court order quashing a subpoena issued by the Defendants on or about February 21, 2015.  The subpoena, styled as a Subpoena to Testify at a Deposition in a Civil Action, seeks the production of information related to a January 14, 2014 interview of Gregory by NBC reporter Willard Shepard.  The subpoena requires Willard Shepard to appear for a deposition and to produce certain news gathering materials, as follows:

> All documents related to the NBC6 news story that ran on or
> about January 14, 2014 featuring Sebastian Gregory,
> including but not limited to raw interview footage,
> photographs, notes or other written, audio-visual, or
> electronic documents or files.

ECF No. [118-1].  The news broadcast at issue includes Mr. Shepard's recitation of

statements purportedly made by Gregory during the interview regarding Gregory's

actions just prior to the shooting.  In particular, as set forth in the Defendants' opposition

to the Motion to Quash, during the newscast, Mr. Shepard stated, "He [Gregory] told us a

Miami-Dade police car pulled up from behind and an officer ordered him to the ground.

Gregory says he reached to adjust the bat so he could comply." ECF No. [125].[2]  Through

the Subpoena, the Defendant seeks to have Mr. Shepard testify regarding the statements

made to him by Gregory during the interview to establish what occurred just prior to the

shooting.

   II.   THE POSITIONS OF THE PARTIES

      A.   Position of Non-Parties NBC and Willard Shepard

   In the Motion to Quash and at the hearing, NBC argued that the subpoena should

be quashed because the journalists' privilege prohibits the Defendant from compelling

Mr. Shepard's deposition or the production of his news gathering materials.[3]  NBC

asserts that in order to overcome the journalists' privilege, the Defendant must satisfy

the three prong test set out by the Eleventh Circuit in *United States v. Caporale*, 806 F.2d

1487, 1503–04 (11th Cir. 1986) by demonstrating that the testimony sought: 1) is highly

relevant to the claims or defenses in this action; 2) is needed in order for Defendant

---

   [2]  The video clip link is available at http://www.nbcmiami.com/investigations/
Parents-of-Teen-Shot-by-Officer-Want-Answers-240183991.html.

   [3]  At the hearing, NBC stated that no news gathering materials existed.  Therefore,
the undersigned only addresses the Motion to Quash to the extent that the subpoena
seeks to compel Mr. Shepard's deposition testimony.

Perez to mount a successful case; and, 3) is not available from other sources. NBC contends that in this case, the Defendant Officer is unable to satisfy any of the prongs of the *Caporale* test and therefore the subpoena should be quashed. As to the first prong, NBC argues that because Mr. Shepard has no first-hand knowledge of Officer Perez's motives related to the shooting or the conduct alleged to have violated Gregory's civil rights, Mr. Shepard's testimony is not highly relevant to the claims or defenses in this lawsuit. NBC next asserts that Mr. Shepard's testimony is not necessary to the presentation of the Defendant's case because, again, Mr. Shepard has no first-hand knowledge of the conduct at issue. NBC thus contends that the Officer's successful defense of the case will rise or fall on its own merit without Mr. Shepard's testimony. Third, NBC contends that there are alternative sources available to confirm the statements made by Gregory regarding the events of the shooting. Thus, NBC contends that the Defendant's desire to obtain the Mr. Shepard's testimony to impeach Gregory is insufficient to satisfy the final requirement necessary to overcome the journalists' privilege.

### B.   Position of Defendant Officer Perez

In response, the Defendant argues that the journalists' privilege is outweighed by Officer Perez's right to defend himself against allegations of an unjustified shooting in this § 1983 action. In support of this contention, the Defendant asserts that because during his deposition Gregory denied that he made statements to Mr. Shepard regarding Gregory's actions just prior to the shooting, the Defendants need to depose Mr. Shepard to confirm that Gregory, in fact, made such statements. The Defendants contend that such statements are admissions and are not needed merely for impeachment purposes but are highly relevant to this action because they directly bear on whether Officer Perez had grounds to believe that Gregory posed a threat of serious physical harm. Further, the Defendant contends that because Officer Perez's defense is that he shot Gregory

because he believed that Gregory was reaching for a gun when Gregory reached for the aluminum bat concealed in his waistband, the requested testimony is necessary for the proper presentation of the case.  Finally, the Defendant  asserts that he has exhausted all other avenues to obtain Gregory's admissions because Gregory has denied making those statements, and Gregory's parents testified in their depositions that they did not recall hearing Gregory making such statements.  Thus, the Defendant contends that he has satisfied all three of the *Caporale* factors and is entitled to depose Shepard on this issue.

III.    <u>LAW AND ANALYSIS</u>

A.    <u>The Journalists' Privilege</u>

The Eleventh Circuit recognizes a qualified privilege for journalists which allows them to resist compelled disclosure of their professional news gathering efforts in both criminal and civil proceedings, *U.S. v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013). This privilege stems from the adverse effect of forcing journalists to testify in judicial proceedings about the substance of their news reports. *See Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir. 1980)[4] (formally adopting reporter's privilege enunciated by other circuits).  This privilege applies whether the professional news gathering efforts and results are published or not.  *McCarty v. Bankers Insurance Co.*, 195 F.R.D. 39, 44 (N.D. Fla. 1998).

In *United States v. Caporale*, 806 F.2d 1487, 1503–04 (11th Cir. 1986), the Eleventh Circuit set forth a three-prong standard that a litigant must meet in order to overcome the reporter's privilege, as follows: (1) the information sought must be highly relevant; (2) the information must be necessary to the proper presentation of the case; and, (3) the

---

[4]  In *Bonner v. City of Prichard, Ala.*, 661 F. 2d 1206, 1210 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down as of September 30, 1981.

information must be unavailable from other sources. *Caporale*, 806 F.2d at 1504,

*McCarty*, 195 F.R.D. at 47.  Overcoming the standard is a "heavy burden" and the

standard must be met by clear and convincing evidence. *U.S. v. Thompson*, No. 20522-

CIV-CR, 2015 WL 1608462 * 1 (S.D. Fla. April 10, 2015), citing *McCarty v. Bankers Ins. Co.*,

195 F.R.D. 39, 47 (N.D. Fla.1998).  In addition, in the Eleventh Circuit, the test for

overcoming the privilege remains the same even if the information was not obtained from

a confidential source.  *United States v. Blanton*, 534 F. Supp. 295, 297 (S.D. Fla. 1982).

      Based upon the facts of this case, for the reasons set forth below, the

undersigned concludes that Defendant Officer Perez has satisfied the test set forth by

the Eleventh Circuit in *Caporale,* and is entitled to obtain limited testimony from NBC's

reporter, Willard Shepard.

      **B.**    <u>**Defendant Officer Perez has demonstrated clearly and convincingly that the testimony sought is highly relevant, necessary to the proper presentation of the case and unavailable from other sources**</u>

      **1.**   <u>*The testimony sought is highly relevant to this action*</u>.

      The first *Caporale* prong that the Defendant must meet in order to overcome the

journalists' privilege is to demonstrate that the information sought is highly relevant to

the action.  As stated above, the Defendant contends that Gregory's statements made to

the reporter are highly relevant to this action because such statements are substantive

evidence of what actions the Plaintiff took, including any movement of the bat, just prior

to being shot by the Defendant Officer.  Defendant contends that these statements

therefore, are crucial evidence regarding the central issue in dispute in this case.  NBC,

on the other hand, argues that the reporter's testimony is not relevant, let alone, highly-

relevant, because Mr. Shepard has no first hand knowledge of the events that occurred at

or just prior to the shooting.  NBC further asserts that the very argument advanced by

Defendant on this factor was rejected by a trial court in *United States v. Diaz*, No. 03-

20895-CR, 2004 WL 1944851, at *1 (S.D. Fla. April 27, 2004).

Based upon a thorough review of the record, the undersigned concludes that the information sought by the Defendant directly relates to the crux of the dispute in this case; whether Officer Perez's actions related to the shooting were justified.  Indeed, in his deposition, Officer Perez testified that just before the shooting, Gregory moved his right hand quickly to what Officer Perez believed was a gun, and that Officer Perez believed that Gregory was going to shoot him, so he needed to act to defend his life, ECF No. [154-1] at 93.

In contrast, in his deposition, Gregory testified that right before the shooting, while he lay on the ground with his hands stretched out, he wobbled his leg because the bat was bothering him, ECF No. [154-2] at 27, 28.  Gregory also testified that he did not tell the reporter that he reached to adjust the bat so that he could comply with Officer Perez's command, ECF No. [154-2] at 23.

Similarly, in the Defendant's Motion for Summary Judgment, the Defendant contends, *inter alia*, that, just prior to the shooting, Plaintiff Gregory Sebastian moved his hand quickly toward a shiny metallic object and that Officer Perez believed that he was reaching for a gun, ECF No. [154] at 6.  In response, the Plaintiff states that Sebastian Gregory denies reaching for anything at that time, ECF No. [161] at 6.

Based upon the allegations and defenses in this action, there can be little doubt that a determination of the actions of both the Defendant and Gregory at the time of the shooting is critical to determining the validity of the Defendant's defenses.  Thus, the reporter's testimony regarding Gregory's statements, which purportedly describe Gregory's actions at the time of the shooting, particularly in light of Gregory's deposition testimony denying those same actions, is central to this dispute and thus is highly relevant to this action.

It is for this reason that this action is distinguishable from *Diaz,* wherein a defendant subpoenaed a reporter to testify about information the reporter received from

7

law enforcement regarding an anonymous tip which led to the seizure of a boat carrying a large amount of cocaine. *United States v. Diaz*, No. 03-20895-CR, 2004 WL 1944851 *1 (S.D. Fla. April 27, 2004). In granting the reporter's motion to quash the subpoena, the court determined that the defendant failed to demonstrate that the information sought was relevant to his motion to suppress.  Although the court stated to the extent that the defendant was seeking the reporter's testimony to verify the statements of law enforcement agents, that reason was legally insufficient to overcome the privilege, the court first noted that the defendant had asserted numerous arguments and facts to support his motion to suppress, none of which related to the reporter or the news story. The court thus stated that the substance of communications from law enforcement agents to the reporter was not relevant to their alleged actions or the basis for the stop and seizure of evidence.[5]

In this case, unlike in *Diaz*, the statements made by Gregory are highly relevant to the Defendant's claim that his actions were justified.  Moreover, the Defendant has substantial information regarding Gregory's change of his version of eventsregarding whether he adjusted the bat prior to the shooting, based upon Gregory's deposition testimony in comparison to the statements made by the reporter following the interview with Gregory.  In other words, the nature and significance of the testimony sought by the Defendant from the reporter is not speculative, but is specific and highly relevant to the Defendant's claims in this action.

_____

[5]    In addition, the court in *Diaz* found that the defendant failed to demonstrate that the information sought was not available elsewhere, and noted that the details of the anonymous tip  had been well-documented by the filings and testimony in the case. *Id.* at *2.

2.     <u>The information sought is necessary to the proper presentation of the case</u>

Under the *Caporale* test, the Defendant next must demonstrate that the information sought is necessary to the proper presentation of the case. NBC argues that the Defendant has failed to meet his burden because it is not enough that a witness or litigant has adopted a position contrary to a position previously taken to satisfy this prong. Rather, NBC contends that this prong is met only when the moving party can "prove they cannot mount a successful case without it," ECF No. [118] at 6. In response, the Defendant contends that Mr. Shepard's testimony is necessary to the proper presentation of this case because, as stated above, Gregory's actions before the shooting are critical to the officer's defense. In this regard, Defendant argues that because Mr. Shepard's testimony will confirm Gregory admitted to Mr. Shepard that he reached for the partially concealed baseball bat prior to being shot, and then denied such facts in his deposition, the testimony would serve to corroborate the officer's version of the facts. Defendant asserts that the testimony will serve to inform the jury that both the Plaintiff and Defendant initially presented consistent versions of the incident, both of which support the officer's defense in this action.[6]

At the outset, the undersigned notes that it is somewhat unclear how this prong of the *Caporale* test may be satisfied under current Eleventh Circuit law. In several circuits, courts generally apply a lower standard to a party seeking to overcome the journalists' privilege where the information sought is non-confidential. *See U.S. v. LaRouche Campaign*, 841 F. 2d 1176 (1st Cir. 1988); *Gonzales v. National Broadcasting Co.*, 194 F.3d 29, 35 n.5 (2d Cir. 1999). The Eleventh Circuit, however, has not made such a distinction.

---

[6] In its brief, the Defendant also asserts that the testimony is necessary as a check on the Plaintiff's efforts to poison the jury pool in this case by providing a one sided account of the incident on a widely-viewed local news broadcast, ECF No. [125] at 13. However, the Defendant fails to provide any support for this assertion and the undersigned finds little, if any, merit in this argument under the facts of this case.

Thus, perhaps in reliance on the Eleventh Circuit's declination to distinguish the standard for cases involving confidential information, several district courts in this circuit have held that, in order to satisfy the second prong of the *Caparole* test and demonstrate that the information sought is necessary to the proper presentation of this case, the entity seeking to overcome the privilege must demonstrate that it would not be able to succeed on its claims without the information at issue. *See e.g. United States v. Thompson*, No. 14-20522-CR, 2015 WL 1608462 *3 (S.D. Fla. April 10, 2015) (stating that the defendant failed to satisfy the "necessary to the proper presentation of case" prong where defendant failed to show that it was actually impossible for him to succeed on his claims without the subpoenaed evidence); *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39 (N.D. Fla. 1998) (opining that compelling need requirement not met because party failed to show that he would be unable to succeed on claims without testimony of the reporter).

However a close review of several opinions issued from courts in this circuit prior to the Eleventh Circuit's decision in *Caporale,* and the *Caporale* decision itself, support the conclusion that the "necessary to the proper presentation of the case" prong requires only that a party demonstrate a *compelling need* for the information rather than requiring that the party establish that it is unable to prove its claim or defense without the information sought.[7]

---

[7] This conclusion is bolstered by the fact that Florida Statute §90.5015 which addresses the journalist's privilege in Florida, states that the privilege may be overcome by a clear and specific showing that: (a) the information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought; (b) the information cannot be obtained from alternative sources; and (c) a compelling interest exists for requiring disclosure of the information.  As noted in *McCarty v. Bankers Ins.*, this statute establishes a three-part test similar to that of the federal common law.  In *McCarty*, the Court, in describing the then recently enacted Florida statute, stated, "Based upon the recent change in Florida law as it relates to the journalist's privilege, the Court has determined that application of either the federal common law standard of the newly announced Florida standard will yield the same result, as the *factors of each* are *virtually indistinguishable*." *Id.* at *46.  (emphasis

In *Loadholtz v. Fields*, 389 F. Supp. 1299 (M.D. Fla. Feb. 7, 1975), decided a decade before *Caporale*, the District Court in a civil action examined whether a newspaper reporter could be compelled to produce documents and answer deposition questions about statements made by a defendant to that reporter regarding prior lawsuits that gave rise to the litigation then before the court.  Ultimately, the court concluded that the paramount interest served by the unrestricted flow of public information protected by the First Amendment outweighed the subordinate interest served by the liberal discovery procedures embodied in the Federal Rules of Civil Procedure.  *Id*. at 1300.  In reaching that conclusion, the court observed that the plaintiff in that case had shown no compelling reason to countermand the principles embodied in the First Amendment and had "not even demonstrated that the information sought could not be gleaned from other sources such as interrogatories directed to or depositions of the defendants themselves." *Id*. at 1302. The court did not specifically discuss what would constitute a "compelling reason" sufficient to overcome the privilege and did not discuss how the plaintiff's reasons were deficient.

Several years later, in *United States v. Blanton*, 534 F. Supp 295, 297 (S.D. Fla. Feb. 15, 1982), citing *Loadholtz*, the District Court examined whether a reporter would be required to testify in a criminal case regarding an article that included drug-related quotations and other statements attributed to a criminal defendant in a drug prosecution case. The Government argued that the defendant's statements were admissions that were essential to the Government's proof in the criminal case which was largely circumstantial.  The court rejected the Government's argument and in doing so stated, "Although no confidential source or information is involved, this distinction is irrelevant to the chilling effect enforcement of the subpoena would have on the flow of information to the press and public." *Id*. at 297.  The District Court then stated that the First

added).

**11**

Amendment requires that a reporter be immune from subpoenas in criminal cases unless the party seeking to overcome the privilege shows: 1) that the information is relevant and material to the proof of the offense charged or the defendant's defense; 2) that there is a compelling need for disclosure sufficient to override the reporter's privilege; and 3) that the party has unsuccessfully attempted to obtain other sources less chilling of First Amendment freedoms. *Id.* The court concluded that the Government had failed to meet the test in that it failed to exhaust or make reasonable attempts to exhaust non-media sources for the information sought or equivalent information.[8]  The court therefore granted the reporter's motion to quash the Government's subpoena.  Notably, the court stated that the reporter did not need to appear to testify until he was properly served and until the Government showed that it had met the requirements set out by the court.  *Id.* Thus, the court never directly addressed the issue of whether the Government had satisfied or could satisfy the requirement that it had a compelling need for the disclosure sufficient to override the reporter's privilege.

In *United States v. Caporale*, 806 F.2d 1487, 1503–04 (11th Cir. 1986), the Eleventh Circuit affirmed a district court's refusal to compel the testimony of two reporters who had information about the source of a jury-tampering rumor.  At the District Court level, one of the reporters identified the source of the rumor as one of the acquitted defendants but that same reporter refused to testify about the rumor citing, among other things, the First Amendment privilege. *Id.* at 1503. The District Court thereafter permitted the party seeking the information to propound interrogatories on that particular reporter within a specified time which the court would then require the reporter to answer. *Id.* at 1503-04. However, the party failed to timely serve the interrogatories, and the trial court deemed

---

[8]  The Court also concluded that the United States had failed to follow certain Department of Justice Guidelines, which included had a duty to negotiate in good faith with the reporter's counsel. *Id.*  The Court also found that no proper service was made on the Reporter. *Id.*

the party's request for the information as waived.  In denying the party's subsequent request for the information, the trial court noted that the interrogatories were not essential for a fair determination of the jury-tampering issue because the information sought from the reporter had been obtained from the revealed source of the rumor, himself. *Id.*  The Eleventh Circuit found that the District Court's decision was entirely reasonable because the party seeking the information failed to take advantage of the means made available to it to interrogate the reporter, and further concluded that the party was able to get the information that it sought from the source identified by the reporter, notwithstanding that the source denied saying anything to anyone about jury-tampering. *Id.* at 1504.

In addition, in evaluating whether the district court in *Caporale* erred in refusing to compel the second reporter to testify at the hearing regarding jury-tampering, the Eleventh Circuit cited the Fifth Circuit's decisions in *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir. 1980) and *In Re Selcraig*, 705 F.2d 789 (5th Cir. 1983), for the standard that overcoming the reporter's privilege required that the information be highly relevant, necessary to the proper presentation of the case and unavailable from other sources.  *Id.* at 1504.  In application of that standard, the reviewing Court found that the district court did not err in concluding that the defendant failed to demonstrate that the information sought was unavailable from other sources or necessary to the proper presentation of the case, in light of the fact that the source of the jury-tampering rumor had already been obtained by the requesting party when several FBI agents testified at the hearing regarding the source of the rumor. *Id.*  Thus, the Court did not provide an analysis of what was required to establish that the information was necessary to the proper presentation of the case.

The Fifth Circuit opinions cited in *Caporale* provide some additional guidance on this point.  In *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir. 1980), the Fifth

Circuit in a libel action set out the general test for overcoming the reporter's privilege as requiring that the information be relevant, unobtainable from other means and that the entity seeking to overcome the privilege have a compelling interest in the information. *Id*. at 726.  The court in *Miller* then compelled the reporter to divulge the identity of his confidential source finding that the information was relevant and that the plaintiff in the action had a compelling interest in the information because it was the only way that the plaintiff could establish malice and prove his libel case.  The court in *Miller* did not state that a compelling need prong *required* that the plaintiff demonstrate that absent the requested information that the plaintiff was unable to establish his libel claim.  However, in a subsequent *per curiam* opinion, (Miller II), the Fifth Circuit supplemented the original *Miller* opinion by including further clarification applicable to the requirements that a plaintiff in a libel action must show in order to be permitted to obtain the identity of a confidential informant, by stating that the plaintiff's showing must include a showing that the identity of the reporter's informant is not available by other means and the knowledge of the identity of the informant is necessary to proper preparation and presentation of the case. *Miller*, 628 F.2d 932 (5th Cir. 1980).

It was this language that was included in *In Re Selcraig*, 705 F.2d 789 (5th Cir. 1983), which was also cited by the Court in *Caporale*, as setting the standard for overcoming the journalists' privilege. Notably, although not specifically quoted by the Eleventh Circuit, the Court in *Selcraig* stated,

> We have not overlooked the contention made by Selcraig and by the amicus curiae that the *Miller* test is not strict enough to protect the reporter's privilege in civil cases when the reporter is a non-party witness and that the reporter's privilege is invadable only if it is shown that there is a "compelling need" for the information or that it is "absolutely critical" to a claim or defense. *Miller* establishes the rule for this circuit. We deem its criterion an adequate shield.

*Id.* at 799.  Thus, the Fifth Circuit rejected the reporter's attempt to increase the burden by requiring the information sought to be "absolutely critical" to a claim or defense, which is the same increase burden that the new media seeks here.  Further, in *Selcraig*, a case that involved a discharged school official's suit related to allegedly false and stigmatizing charges levied against him, the court rejected the reporter's argument that because he was not a party trying to protect himself against a libel suit, but was simply a witness trying to protect his sources, the privilege should shield him from disclosing the requested information. *Id*.  The court stated that the reporter was not being asked to divulge information to locate other witnesses but concluded that he was a percipient witness to a fact at issue, the identity of the persons who had provided him with information, which was relevant to a claim for punitive damages.[9]

Finally, in *Price v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005), the Eleventh Circuit vacated and remanded the District Court's order granting a motion to compel the identity of an unnamed source in a libel and slander action where the litigant seeking to overcome the journalists' privilege had not sufficiently established that there was no other reasonable means of discovering the identify of the confidential source. However, the court found that the plaintiff had adequately demonstrated that the identity of the source was necessary to the proper presentation of the case.  *Id*. at 1346.  In so doing, the Court cited to *Miller II* and concluded that knowledge of the identity of the informant was not only necessary to the proper preparation and presentation of the case but was vital to the case because the only way to determine recklessness for purposes of establishing malice was to examine the reliability of that informant. *Id*. at 1345.

---

[9]  Ultimately, the Fifth Circuit determine that Plaintiff had failed to establish a prima facie case of liability, and therefore the request to compel a disclosure related to punitive damages was premature.  It is interesting to now that in *Selcraig*, the reporter provided certain testimony, only refusing to identify the confidential source.  705 F.2d at 794.

Thus, based on the foregoing cases, there is no indication that the Eleventh Circuit's test in *Caporale* requires that a party seeking to overcome the journalists' privilege establish that the information sought is absolutely critical to a claim or defense but only that the party seeking to overcome the privilege has a compelling reason for seeking the information.  Those cases where the reviewing courts concluded that the party seeking to overcome the privilege had established that without the information sought its claims would fail were libel or libel-like cases where the identity of the informant was not known, and therefore the party was unable to mount a defense or prove a claim in that action.  It does not follow however, that the "necessary to the proper presentation of the case" requirement can only be met in those situations.

In fact, the undersigned has not found, and the Parties have not cited a case where a court in this circuit has upheld the journalists' privilege where it has been determined that there are no other sources available to the party for the information sought and that the information sought is highly relevant.  Rather, in all of the cases cited by NBC, the court simultaneously found that the person seeking to overcome the privilege failed to demonstrate that the materials were not available from another source or the information was highly relevant to the litigation. *See United States v. Fountain View Apartments*, No. 6:08-CV-891-Or-35DAB, 2009 WL 1905046, at *1, *4 (M.D. Fla. July 1, 2009) (finding reporter's privilege not overcome by party seeking out-takes of interviews of parties by reporters in housing discrimination law suit where no showing that persons in out-takes were not available to testify and no showing that their recollections were impaired or otherwise unreliable); *Anguillula v. Collier County*, No. 2:08-CV-606-F.M.-99-SPC, 2009 WL 37623857 (M.D. Fla. June 18, 2009) (holding journalist's privilege not overcome where no evidence that information could not be obtained from another source)*; McCray v. Beary*, No. 97-1553-CIV-OR-18A, 1999 WL 1027042 *1 (M.D. Fla. Feb. 12, 1999) (holding that reporter's privilege not overcome because not highly relevant and

not necessary to proper presentation of defendant's case where substance of plaintiff's statements to reporter were already a matter of record through plaintiff's deposition testimony).

To be clear, the undersigned agrees that if the Defendants were merely seeking to obtain the testimony for impeachment purposes, the second prong of the inquiry would not be met as courts have held that attacking a witness' credibility does not rise to the level of "compelling and overriding" necessity required to overcome the privilege. *See e.g., Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995); *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81 (D.D.C. 2010).  However, in this case, the Defendant seeks testimony not merely for impeachment purposes but as a substantive admission by the Plaintiff for purposes of establishing the very facts central to the resolution of this matter.  Thus, although the undersigned recognizes that in the Eleventh Circuit it is a rare case in which a litigant will be able to overcome the journalistic privilege, even where the testimony sought relates to non-confidential, published material, the unique facts in this case warrant that the journalistic privilege yield to the Defendant's request for highly relevant testimony that is necessary for the proper presentation of his case.

The undersigned does not suggest that the standard applied by the Eleventh Circuit should be, or has been lowered when applied to non-confidential sources and/or previously published materials, rather, the Court merely suggests that the Eleventh Circuit test as applied, without distinction as to both confidential and non-confidential information, balances the interests and does not require the party seeking disclosure to demonstrate that it cannot prove its case without the requested information, only that it has a compelling need for the information where the court determines that the information is both highly relevant and where other sources for the information are not available.  Such is the case here.

As discussed above, the central issue in this case is whether Officer Perez's actions were justified when he shot Gregory.  As there are no eyewitnesses to the shooting other than Officer Perez and Gregory, the testimony of Gregory and Perez is critical to determining the events surrounding the shooting and what Officer Perez observed just prior to the shooting.  Because Gregory has denied that he reached to adjust the bat immediately prior to the shooting, and has denied that he made statements regarding adjusting the bat to anyone, the testimony of the NBC reporter takes on heightened significance and is necessary for the proper presentation of the case.  If the testimony of the reporter is not permitted, the trier of fact may be deprived of the opportunity to consider an admission by the Plaintiff regarding the facts surrounding the shooting.  Under other circumstances, statements purportedly made by Gregory to a reporter might not provide a compelling need for the reporter's testimony, but under the unique set of facts presented in this case the Defendant's compelling need for the testimony has been established.[10]

In this regard, this case is much like *NLRB v. Mortensen*, 701 F. Supp. 244 (D.D.C. 1988).  In *Mortensen*, three journalists had written articles related to a well-publicized labor dispute wherein statements were attributed to certain individuals on the Management Council, each of whom denied or refused to confirm the quoted statements. *Id*.  The court in *Mortensen* found that the statements attributed to the Council members were central to issues in the case and determined that without the authentication of the statements, the NLRB would not have a fair opportunity to prove that the Council engaged in unfair labor activities. *Id*. The court therefore compelled the reporters to

---

[10]  To the extent the Defendant argues that the very nature of a § 1983 civil rights action requires that the reporter's privilege yield in this case, the Court rejects that argument and concludes that it is the unique circumstances of this particular case the provide a compelling need to overcome the privilege, rather than the nature of the action. See *Loadholtz v. Fields*, 389 F. Supp., at 1301 (rejecting blanket rule that journalist's privilege yields in cases involving civil rights claims).

testify as to whether the statements they attributed had, in fact, been made. *Id.* at 250.[11]

*Accord United States v. Foote*, Case 00-CR-20091-01-KHV, 2002 WL 1822407, at *1 (denying motion to quash subpoena issued by the Government to a newspaper related to a series of articles wherein the defendant purportedly made statements related to the allegations of counterfeit merchandise.)[12]

Further, to the extent that other courts in this district have found that the journalistic privilege has not been overcome because the party seeking the protected information failed to establish that the information was highly relevant and necessary to the proper presentation of the case, this case is distinguishable.  Specifically, unlike the statements in *United States v. Thompson*, No. 14-20522-CR, 2015 WL 1608462 *3 (S.D. Fla. April 10, 2015), which the court found to be highly speculative and conjectural, the statements purportedly made by the Plaintiff to Mr. Shepard in this case are not speculative but have been described in detail in the video taped report of the interview of Gregory.

Simply put, the Defendant has clearly and convincingly demonstrated a compelling need for the reporter's testimony regarding the statements related to

---

[11]  The Court in *Mortensen* applied the test three-part balancing test from the Third Circuit to determine whether the reporter's privilege could be overcome, as follows: 1) whether the party seeking to override the privilege demonstrated that he has made an effort to obtain the information from other sources; 2) whether the moving party demonstrated that the only access to the information sought was through the journalist and her source, and 3) whether the moving party has persuaded the court that the information sought was crucial to the claim. *Id.* at 248 (citing *Untied States v. Criden*, 633 F. 2d 346, 358-59 (3rd Cir. 1980)).

[12]  In *Foote*, the trial court applied the following test in determining whether the journalists' privilege has been overcome:  (1) whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful; (2) whether the information goes to the heart of the matter; (3) whether the information is of certain relevance; and (4) the type of controversy. *Foote, at *2 citing Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433 (10th Cir. 1977) (*citing Branzburg v. Hayes*, 408 U.S. 665 (1972)).

Gregory's actions just prior to the shooting, and thus the testimony is necessary to the proper presentation of this case.

### 3.   The information sought is unavailable from another source

Finally, the third *Caporale* prong for overcoming the journalists' privilege requires that the Defendant demonstrate that the information sought is not available from other sources.  *United States v. Capers*, 708 F. 3d 1286 (11th Cir. 2013) (affirming trial court's decision to quash a subpoena issued by a defendant to a news organization seeking production of a criminal defendant's interview with the police where even assuming information was highly relevant to the defendant's defense, the defendant failed to establish that the materials were unavailable from another source); *Price v. Time, Inc.*, 416 F. 3d 1327 (11th Cir. 2005) (same).  At the hearing, NBC argued there are other ways for the Defendant to obtain the information regarding Sebastian Gregory's actions just prior to the shooting including from Gregory and the Defendant Officer.  In addition, as to the statements purportedly made by Gregory, NBC argued that the Defendant never asked other witnesses who were present during the interview if they heard what Gregory said to the reporter.  On this point, NBC argued that the video demonstrates that there were alternate sources present, including Gregory's parents, siblings and former attorney, when Gregory made the statements at issue. Finally, NBC contends that the expert report regarding Plaintiff's injuries issued by Dr. Lew is sufficient to dispute Gregory's version of the facts given in his deposition, and thus maintains that Mr. Shepard's testimony is not necessary.

The Defendants countered that because the incident involved only two people, *i.e.* a "one on one" incident, there are no other eyewitnesses who can provide testimony regarding the events just prior to the shooting.  As to NBC's contention that the information regarding Sebastian Gregory's statements to Willard Shepard is available from other sources, the Defendant contended that he had propounded an Interrogatory

to Sebastian Gregory, asked Sebastian Gregory's parents, and sent out investigator and took depositions in an effort to secure alternative sources for the statements purportedly made by Gregory regarding his movements before the shooting.  In addition, the Defendant established that he had attempted to obtain the same or similar statements made by Gregory through discovery of Gregory's emails, text messages and social media. The Defendant represented that none of those efforts were fruitful, and this assertion was not disputed.[13]  Finally, the Defendant emphasized that in his deposition, Gregory denied that he made such statements to Mr. Shepard, and thus the Defendant does not have any other sources to confirm that such statements were made other than Mr. Shepard.   Moreover, at the hearing, when the Plaintiff's former attorney was questioned regarding the circumstances of the interview and what Gregory said at that interview, former counsel could not recall what statements were made by Gregory, if any, regarding the movement of the bat prior to the shooting.[14]

Under these circumstances, the Court concludes that the Defendant has established that he is unable to obtain the information regarding Gregory's statements purportedly made to Mr. Shepard which recount the events leading up to the shooting from other sources.  In addition, the Court notes that in this case, it appears that the Defendant has exhausted all other available avenues to obtain facts to establish Gregory's actions just prior to the shooting.   As to NBC's contention that Dr. Lew's

---

[13]  To the extent that Plaintiff might have sent emails regarding his actions, the undersigned notes that Plaintiff's deletion of emails deprived Defendant of the opportunity to view them.

[14]  Plaintiff's prior attorney, Mr. Della Ferra, was present at the Plaintiffs' home when the interview with Willard Shepard was conducted.  Upon agreement by NBC and the Defendant who were both present at the hearing, Mr. Della Ferra was contacted by the Court and the audio of the interview was played to refresh attorney's recollection.  The Attorney confirmed that he did not recall what statements were made by Sebastian Gregory during the interview with Willard Shepard.  Mr. Della Ferra also stated that at one point during the interview, Plaintiff's younger siblings came home from school.

report provides the information sought by the Defendant, the Court finds this contention without merit. There is nothing in Dr. Lew's report that demonstrates whether Gregory reached to adjust the bat just prior to the shooting, ECF No. [154-7].

The undersigned therefore concludes that the Defendant has clearly and convincingly demonstrated that the testimony sought is not available from other sources, and thus has satisfied the third *Caporale* factor.

Accordingly, the undersigned has determined that the Defendant has satisfied all three *Caporale* factors, and the journalists' privilege must yield under the facts of this case. The Defendant is therefore entitled to obtain the testimony he seeks from the reporter. However, the undersigned recognizes that various courts have expressed concerns about the need to limit the extent to which overriding the privilege encumber's the ability of a reporter to perform his First Amendment news gathering function. *See e.g. NLRB v. Mortensen*, 701 F. Supp. 244, 250 (D.D.C. 1988). With that concern in mind, the undersigned concludes that the Defendant has only overcome the privilege to the extent that the reporter's testimony will provide verification of the statements made by Gregory regarding his actions immediately before the shooting related to adjusting the bat. Therefore, the deposition of Mr. Shepard will be limited in scope and duration.

IV.   <u>CONCLUSION</u>

Accordingly, based on the foregoing, it is hereby:

**ORDERED AND ADJUDGED** that Nonparties NBC and Willard Shepard's Motion to Quash February 2015 Subpoena Duces Tecum for Deposition and for Protective Order, ECF No. [118], is **DENIED**. NBC and Willard Shepard are directed to comply with the Subpoena Duces Tecum issued on or about February 21, 2015 by the Defendants. It is further

**ORDERED AND ADJUDGED** that on or before June 5, 2015, Willard Shepard shall appear for a deposition that will be limited to the questions regarding statements made to him by Sebastian Gregory on or about January 14, 2014 related to the shooting incident that occurred on May 28, 2012.  The deposition shall not exceed two hours with a maximum of one hour of questioning by the Defendant and one hour of questioning by the Plaintiffs.  If NBC desires to question Mr. Shepard at the deposition, it may do so with no time limitation.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida, this 28th day of May, 2015.

_Andrea M. Simonton_
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**


Copies furnished via CM/ECF to:
The Honorable Donald L. Graham,
    United States District Judge
All counsel of record